**James Lee FRICK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–537.**

Court of Criminal Appeals of Oklahoma.

Sept. 18, 1981.

Rehearing Denied Oct. 27, 1981.

John M. Stuart, Kee, Kramer & Stuart, Duncan, for appellant.

Jan Eric Cartwright, Atty. Gen., Timothy S. Frets, Asst. Atty. Gen., Oklahoma City, for appellee.

BRETT, Presiding Judge:

Early in the morning on April 29, 1977, Larry Leffingwell was stabbed several times. He arrived at his Oklahoma City home at about 2:30 a. m. and was attacked in his driveway. He later testified that the driveway was well lit and that he got a look at his assailant. In addition to Mr. Leffingwell's identification of the appellant, the State presented tape recordings made in Virginia of three people conspiring to use force to enable one of them to collect a debt from Mr. Leffingwell. One of the three men testified that the appellant was given five hundred dollars and sent to Oklahoma City to assault Mr. Leffingwell, and that when he returned a few days later he had bloodstains on his clothes.

Four months later, Mr. Leffingwell began receiving telephone calls threatening him with additional harm if he did not pay a large of sum of money, now double the original indebtedness. Cooperating with the police, Mr. Leffingwell followed the instructions given and put a briefcase in a garbage sack in a dumpster. The appellant was arrested when he picked up the briefcase.

The appellant was charged with assault and battery with the intent to kill in Oklahoma County District Court, Case No. CRF–77–3226. The jury found him guilty of assault and battery with a dangerous weapon and sentenced him to five years' imprisonment.

I

In his first assignment of error the appellant contends that his motion to quash and set aside the information should have been sustained. He asserts that there was insuf-

ficient evidence presented at the preliminary hearing to justify holding him for trial. The thrust of his argument is that the tape recordings from Virginia were inadmissible and had they been stricken the State would not have carried its burden.[1]

The tapes were acquired by accident. In the course of a narcotics investigation, Virginia law enforcement officers sought and obtained a court order allowing them to place a wiretap on the telephone of Dennis Mongan in Roanoke, Virginia. And while the tap was in operation they recorded telephone conversations between Mongan, Claude Campbell and Frank Persson about collecting the debt that Mr. Leffingwell owed to Mr. Persson by sending the appellant to Oklahoma City to assault Mr. Leffingwell. The Virginia officers then received an authorization from their judge to release the tapes to the Oklahoma City police.

### A

█ Wiretapping is unlawful in Oklahoma. Title 21 O.S.1971, § 1757, provides that any person who "fraudulently or without legal authority, intercepts any message, communication or conversation in its passage over such [telephone or telegraph] wires, ..." is guilty of a misdemeanor. Although the phrase "without legal authority" seems to imply that wiretapping would be permissible under certain circumstances, there are no statutes providing for the granting of legal authority. The appellant does not challenge the legality of the wiretapping in Virginia;[2] he argues that the wiretapping evidence would have been inadmissible had it been obtained in Oklahoma, and that therefore it should be inadmissible without regard to where it was obtained.

The case cited by the appellant for this argument, *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), is not in point. In *Elkins* the United States Supreme Court held that evidence obtained by state officers could not be admitted in federal court. But in *Elkins* the state officers obtained the evidence unlawfully, while in the present case the Virginia officers were in full compliance with Virginia law when they made the recordings. The Oklahoma statute prohibits wiretaps made "without legal authority," and the Virginia taps were authorized. Compare *Commonwealth v. Bennett*, 245 Pa.Super. 457, 369 A.2d 493 (1976), in which wiretap evidence lawfully obtained in New Jersey was admitted in a Pennsylvania state court, even though the evidence could not have been lawfully obtained in Pennsylvania.

### B

The appellant also argues that the wiretap evidence could not be admitted because there was no judge who could authorize it. When law enforcement officers conducting an authorized wiretap for a specific purpose intercept communications relating to offenses other than those being investigated, they may disclose such communications if the disclosure is "authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents where otherwise intercepted in accordance with the provisions of this chapter." 18 U.S.C., § 2517(5). Virginia has a parallel provision. The appellant's contention is that no judge in Oklahoma can be considered a judge of competent jurisdiction, and therefore the admission of the evidence cannot be authorized.

█ The appellant has misinterpreted the statute. The focus of wiretapping leg-

---

1. The appellant does not challenge the admission of the tapes at the trial.

2. The appellant does claim that he should have been given post-interception notice that the wiretapping had taken place. Such notice is required by 18 U.S.C., § 2518(8)(d), and the parallel Virginia statute, but the notice is to be served on the persons named in the order au-

thorizing the wiretapping and in the application for that order, "and such other *parties to intercepted communications* as the judge may determine...." (emphasis added). The defendant was not a party to any of the intercepted conversations, nor was he named in the application or order. He was not entitled to post-interception notice.

islation is on the safeguarding of privacy;[3] and the requirement of authorization is to make certain that tapes of conversations have not been obtained illegally. To serve this purpose, the logical court to authorize disclosure under Section 2517(5) and the parallel Virginia provision is the court which originally authorized the wiretap operation during which the conversations were intercepted.[4]

In the present case, then, the authorization for disclosure should have come from the Virginia court which authorized the drug investigation during which officers overhead the conversations involving the appellant. And that court did issue such an authorization.

C

Another alleged error the appellant finds in the use of the recordings is the State's failure to disclose the full contents of all the intercepted conversations. He says the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Kolod v. United States*, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968). *Brady* deals with the suppression by the prosecution of evidence favorable to the defendant. And in *Kolod* the Justice Department reviewed illegally intercepted conversations and released only those which it felt were relevant to the case; other conversations in which the defendants had participated were not released. The Supreme Court said that the determination of what is relevant must be made by a judge.

In the present case there is no indication that the State suppressed any evidence at all. According to the testimony of the Virginia officers, all conversations in which the defendants (there were originally two co-defendants charged) either partici-

pated or were mentioned were disclosed. Rather than making an *"ex parte* determination of relevancy"* as was deplored in *Kolod,* the Virginia officers released all they had, as far as the appellant was concerned. Whether or not evidence is "relevant" is a conclusion of law which must be made by a court; but the criterion used by the officers in deciding what to release was one of fact, concerning which they could testify and be cross-examined.

D

The appellant's premise in this entire assignment of error is that if the tapes are excluded then the evidence presented at the preliminary hearing was insufficient. The tapes should not have been excluded. They were properly admitted and the assignment of error is therefore without merit.

II

Next the appellant challenges the in-court identification of him by the victim. He raises several factors which he says render the identification unreliable; but as the trial judge noted, most of the factors relate to the question of credibility rather than the possibility of taint. The appellant cites *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Thompson v. State*, 438 P.2d 287 (Okl.Cr.1968) and *McDaniel v. State*, 576 P.2d 307 (Okl.Cr. 1978).

The evidence was that Mr. Leffingwell saw his assailant more than once after the attack. In June, 1977, he went to an air auction, where, from a distance, he saw Frank Persson and the appellant. He did not report the incident to the police. Also in June, a police officer brought Mr. Leffingwell a group of photographs.[5] Mr. Leff-

---

3. "To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court." Omnibus Crime Control

and Safe Streets Act of 1968, P.L. 90–351, § 801(d), 82 Stat. 211.

4. This interpretation is consistent with the federal law. See footnote 3, supra: "... should remain under the control and supervision of the authorizing court."

5. The Virginia judge had authorized the release of the tapes on May 27, enabling the Oklahoma

ingwell could not positively identify anyone, but he did choose two photographs as possible assailants, and one of them was a three-year-old photograph of the appellant.[6] Later, after the extortion calls began and a money drop was arranged, Mr. Leffingwell was present when the appellant was arrested.

 The State argues that none of the appellant's cases are on point because they all involve lineups and there was no lineup in the present case. But the actual issue in the above cases, as in the present case, is the reliability of the in court identification. Compare *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). When a witness takes the stand and identifies a defendant, it must be because that is the person the witness originally saw, and not because subsequent identification procedures have suggested to the witness that the defendant is the person he or she saw. The defendant claimed that any identification made by Mr. Leffingwell would be tainted and the trial court acted correctly in conducting an in camera hearing.

 What sets the present case apart from the above-cited cases, however, is that in the present case there is no hint of improper conduct on the part of any law enforcement officers. The post-attack events are not related to the investigation of the case. In a sense it was the appellant, himself, who made the connections of which he now complains. When the extortion calls began the caller made references to both the original assault and to the air auction.

During the in camera hearing, the trial court allowed the appellant to question Mr. Leffingwell extensively about his opportunity to view his assailant at the time of the attack and about the subsequent events. The court found that the in court identification was not tainted. This Court finds no error in that ruling.

City police to give some direction to their investigation.

6. When the officer asked Mr. Leffingwell if he thought Mr. Persson could have been involved in the attack, Mr. Leffingwell rejected the idea.

## III

In his third assignment of error the appellant maintains he was unfairly prejudiced by the introduction of evidence that he had committed crimes other than the one for which he was on trial. Specifically, he mentions conspiracy (the tapes from Virginia), extortion (the telephone calls and demands for payment) and possession of a stolen credit card (the appellant's billfold was seized when he was arrested and it contained a credit card with a woman's name on it).

Regarding the credit card, the trial judge correctly noted that there was nothing to show a crime had been committed. The appellant's possession of the card could have been just as easily legitimate as illegitimate.

 The appellant does not argue that the evidence fell outside the limited exceptions to the rule barring other crimes.[7] The appellant's argument is that a proper weighing of the danger of prejudice against the probative value would have led the trial court to rule the evidence inadmissible. The trial court gave careful consideration to the admission of the extortion and conspiracy evidence. After giving the appellant a full opportunity to argue, he ruled that the danger of prejudice was not great. This Court has reviewed the record, and the appellant has failed to carry his burden of showing that the trial court abused its discretion.

## IV

 Finally, the appellant complains of passages in the prosecutors' closing arguments. He believes the prosecutors' comments implied that the defense attorney was doing his best to obscure the truth,

7. Such an argument would be unpersuasive: The evidence of the conspiracy and the extortion attempt were clearly admissible to establish the identification of the person who attacked Mr. Leffingwell at his home.

instead of bring it out. This Court does not accept the appellant's argument. The attorneys for both sides are allowed reasonable freedom to comment on the evidence and draw inferences from it, and when the prosecutors' statements are read in context it can be seen that they are fair comments on the evidence.

The judgment and sentence is affirmed.

BUSSEY and CORNISH, JJ. concur.