Daniel Gordon **SELFRIDGE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–84–307.

Court of Criminal Appeals of Oklahoma.

Aug. 6, 1986.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Daniel Gordon Selfridge, was convicted in the District Court of Tulsa County, Case No. CRF–83–391, of First Degree Rape for which he received a sentence of fifty years' imprisonment and he appeals raising three assignments of error.

Briefly stated, the facts show that on Saturday, January 15, 1983 at about 3:00 p.m., nine-year-old M.J. went to her grade school to have a picnic. Not finding a satisfactory place, she had decided to leave when she was approached by a man who asked her if she wanted to see some kittens. She followed him to an area between two prefabricated buildings on the schoolground, he removed her clothes and raped her. He left the scene on foot. She went directly home and informed her mother, who, after she checked M.J. and found blood on her underwear, called the police. After they arrived, M.J. was taken to a hospital where she was examined revealing a very reddened area around the vagina, and a small tear in the hymen.

On January 30, 1983, while returning home in her mother's car with her mother, her grandparents, and her mother's male friend, she saw a man walking one house away from her own and said, "That is the man." She testified that he was wearing the same corduroy coat that he had been wearing the day of the rape. After dropping the women off at their home, the men

followed the appellant to a house located about five blocks from M.J.'s home and about one block from the grade school. After the police were directed to the house, the appellant was arrested. During the trial, M.J. positively identified the appellant as her assailant.

Rebecca Buss, a forensic chemist for the Tulsa Police Department, testified that an analysis of the victim's vaginal smears revealed spermatoza, and that an analysis of the vaginal swab and the victim's underwear revealed antigen A activity which is what would be found in the body fluids of a secreter with blood type A. Both the victim and the appellant have that blood type. The victim was found to be a secreter, and the appellant a weak or nonsecreter.

The appellant's mother and step-father testified that the appellant could not grow a mustache, which the victim had described her assailant as having, and they further testified he had never owned a corduroy coat. However, on cross-examination, the prosecutor introduced a picture of the appellant at the time of the arrest which clearly shows a light mustache. The step-father also testified that the appellant was home at the time of the offense, and that they had watched football games on television all day.

The appellant testified, and denied raping M.J.

█ As his first assignment of error, the appellant complains of improper prosecutorial remarks while examining witnesses and during closing argument. Of the errors alleged in this assignment, only two were properly preserved by the imposition of timely objections. Therefore, we will address only the alleged errors to which the appellant objected. *Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980). Both instances were during cross-examination of witnesses for the defense. First, in response to an answer given by the appellant's mother, he remarked, "So then you and your husband got together and started thinking

about some things you could come up with and ..." (Tr. 446). At that point, appellant's attorney objected and the prosecutor withdrew the question. Second, during cross-examination of the appellant, the prosecutor made the following statement, "On the 15th of January—ok, you already know the answer to that question. I was going to ask you what room you were watching TV in, but you already heard the other people testify." The appellant's attorney asked for a mistrial or in the alternative, an admonishment of the prosecutor, and the court admonished the prosecutor. In view of the overwhelming evidence of appellant's guilt, the withdrawal of the statement by the prosecutor, the admonishment of the court, and the gravity of the offense, the remarks of the prosecutor cannot be said to be so prejudicial as to have adversely affected the fairness and impartiality of the proceedings. We have examined the other comments by the prosecutor of which the appellant complains and find nothing requiring modification or reversal.

█ As his second assignment of error, the appellant alleges that the prosecutor in his closing statement perverted the testimony given by the forensic chemist. We must first note that no objection was made to this allegedly improper statement, nor was a request made that it be stricken. Therefore it is waived. *Luker v. State*, 552 P.2d 715, 719 (Okl.Cr.1976). Even if the alleged errors were properly preserved we would not agree with the conclusion of the appellant. The prosecutor clearly stated at more than one point in his closing argument that the evidence was "consistent" with the appellant's guilt, that it had not ruled out the appellant as the assailant. Counsel for the appellant rebutted that the evidence did not identify the appellant as the assailant either. Attorneys for both sides are allowed reasonable freedom to comment on the evidence and draw inferences from it. *Frick v. State*, 634 P.2d 738 (Okl.Cr.1981). We find that the argument of the prosecutor was fair comment on the

·evidence presented. This assignment of error is without merit.

 As his final assignment of error, the appellant alleges that the trial court should not have admitted evidence relating to a rape kit[1] because no testimony was presented by the examining physician that she had prepared one. In establishing chain of custody, the general rule is that the party who offers the evidence must show, to the satisfaction of the trial judge, that the circumstances of its custody pro-·vide reasonable certainty that there has been no alteration of or tampering with that evidence. Once the court has been shown that the evidence was preserved under circumstances reasonably certain to maintain its integrity, the trial judge may admit the evidence and let what doubt there may be go to its weight. *Hays v. State*, 617 P.2d 223 (Okl.Cr.1980). The record shows that Marshall Dunham, a Tulsa police officer, testified that he obtained a rape kit from Dr. Kathleen Glaze on January 15, 1983, which was then sealed, initialed, and taken to the property room at the main station of the police department. State's exhibit number 2 was admitted into evidence which was a receipt by the property room for the rape kit showing the name of the victim in this case. Dr. Glaze testified to the examination she did of the victim, and Rebecca Buss, the forensic chemist, testified that she received that kit from the property room. Although the testimony could have been better developed, there is no evidence to show that the kit had been altered or that there was any tampering, and there is evidence to infer that Dr. Glaze prepared the kit. Therefore, the trial court did not abuse its discretion in admitting the evidence.

The judgment and sentence appealed from is AFFIRMED.

PARKS, P.J., and BRETT, J., concur in results.

1. The rape kit consisted of vaginal smears, vaginal swabs, a blood sample, saliva sample, gravel from victim's underwear, and scalp hair.