716 A.2d 1221

COMMONWEALTH of Pennsylvania, Appellee,

v.

Angel SANCHEZ, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

J.J. BRICENO–RODRIGUEZ, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Maria RIVERA, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 30, 1997.

Decided July 21, 1998.

Lawrence J. Hracho, Reading, for Angel Sanchez.

Emmanuel H. Dimitriou, Reading, for J.J. Briceno-Rodriguez.

Michael Dautrich, Reading, for Maria Rivera.

Mark C. Baldwin, Iva C. Dougherty, Reading, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

In this case of first impression this Court is asked to determine whether Pennsylvania law or California law should be used to evaluate the propriety of a canine sniff search conducted in California which provided probable cause for a search warrant in Pennsylvania. For the following reasons, we affirm the order of the Superior Court and hold that the legality of the canine sniff conducted in California must be evaluated under California law.

The relevant facts are as follows: On August 26, 1993, an agent from the Bureau of Alcohol, Tobacco and Firearms (ATF) was on assigned duty at a Federal Express location in Bakersfield, California investigating drug trafficking from the facility when he observed a man and woman pay $77 in cash in order to ship a package to Pennsylvania. The agent noted the license plate on the couple's automobile as they departed. The agent then inspected the package in question, which weighed thirty-seven pounds, and observed that it was addressed to Sr. Angel Sanchez at a specific address in Shillington, Pennsylvania. The return address was listed as Ceramics, Inc., with a local address and telephone number.

The ATF agent called directory assistance and learned that there was no listing for Ceramics, Inc. in the Bakersfield area. He further referenced several telephone directories and determined that the address given for Ceramics, Inc. did not exist. The agent then called the telephone number listed on the return slip. When what seemed to be a young Hispanic female answered the phone, the agent heard young children crying in the background, and hung up without speaking. The agent then ran a check of the license plate with the California Department of Motor Vehicles. The car was registered to one Maria Ramirez of Bakersfield, California.

Subsequently, the ATF agent called the Kern County Sheriff's Department and requested that an officer bring a drug detecting canine to the Federal Express office. The officer arrived shortly thereafter with his trained canine, which posi-

tively indicated the presence of narcotics in the package. The agent then allowed the package to be shipped to its intended destination in Pennsylvania and telephoned Detective Joe Mekosh in Berks County, Pennsylvania to relay information concerning the package. The detective used the information supplied by the ATF agent to secure a search warrant for the package upon its arrival in Pennsylvania. A search of the package revealed that the shipment contained fifteen smaller packets of marijuana. The detective then arranged for a controlled delivery of the package to the address listed and obtained a search warrant for the premises in question. The search resulted in the seizure of large amounts of cash, marijuana, and other evidence of drug trafficking.

Appellant Briceno–Rodriguez accepted delivery of the package and signed for its receipt. Appellant Sanchez was the owner of the premises and the person to whom the package was addressed. Police found substantial evidence, including telephone bills, connecting appellant Rivera to the residence. Appellants were each charged with possession of a controlled substance, possession with intent to deliver a controlled substance, possession of drug paraphernalia, and conspiracy to possess a controlled substance. Appellants Sanchez and Ramirez were also charged with conspiracy to possess with the intent to deliver a controlled substance and conspiracy to possess drug paraphernalia.

Appellants filed requests for habeas corpus relief and motions to suppress, alleging violations of the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. After a hearing on the motions, the trial court determined that the legality of the canine sniff conducted in California should be evaluated under Pennsylvania law as opposed to California law. The court reasoned that the law of evidence is procedural in nature and that therefore, the law of the forum state should apply. The trial court further concluded that under Pennsylvania law, the facts known to the ATF agent did not rise to the level of reasonable suspicion to justify the canine search. Therefore, the trial court suppressed all of the evidence obtained subse-

quent to the canine sniff, and granted appellants' requests for habeas corpus relief.

The Commonwealth certified that the suppression orders terminated the prosecution and appealed the trial court's order to the Superior Court. The cases were consolidated for appeal. The Superior Court, in a published opinion and order, reversed the trial court and remanded the matter for trial.[1] The Superior Court found that the question of the propriety of the canine sniff was a question of substantive law that should be analyzed under California law, and concluded that the sniff of appellants' package was legally conducted pursuant to California law. Petitioners filed a timely petition for allowance of appeal to this Court and allocatur was granted limited to the issue of whether Pennsylvania law or California law should apply to evaluate the propriety of the canine sniff.

Information secured through valid and legal means in a foreign jurisdiction may be used to establish probable cause for a search warrant in this Commonwealth. The result of a canine sniff constitutes admissible evidence in both California and Pennsylvania, and can be used to support a search warrant in Pennsylvania so long as the sniff was conducted legally. Thus, the issue that this Court must address is whether Pennsylvania or California law should be used to determine whether the canine sniff in the instant case was conducted through valid and legal means.[2]

In conflicts cases involving procedural matters, Pennsylvania will apply its own procedural laws when it is serving as the forum state. In cases where the substantive laws of Pennsylvania conflict with those of a sister state in the

---

1. 448 Pa.Super. 631, 672 A.2d 830 (1996) (Beck, J. concurring).

2. A canine sniff is not considered a search under California law, is not given constitutional protections, and therefore need not be supported by probable cause. *People v. Mayberry*, 31 Cal.3d 335, 182 Cal.Rptr. 617, 644 P.2d 810 (1982). This Court has held that a canine sniff is a search requiring: (1) that the police be able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and (2) that police are lawfully present in the place where the canine sniff is conducted. *Commonwealth v. Johnston*, 515 Pa. 454, 465, 530 A.2d 74, 79 (1987).

civil context, Pennsylvania courts take a flexible approach which permits analysis of the policies and interests underlying the particular issue before the court. *See Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796, 805 (1964). This approach gives the state having the most interest in the question paramount control over the legal issues arising from a particular factual context, thereby allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome. *Id.* We believe that a similar approach should be taken in the criminal context where the substantive laws of this Commonwealth conflict with those of a sister state.

■■ Initially, we note that this case does not present a question of conflict between procedural laws as appellants assert. Appellants rely on the Superior Court's decision in *Commonwealth v. Dennis,* 421 Pa.Super. 600, 618 A.2d 972 (1992), *alloc. denied,* 535 Pa. 654, 634 A.2d 218 (1993) to support their position that the issue of whether a canine sniff is a search is a matter of procedural rather than substantive law; and that accordingly, this Court should apply Pennsylvania law to evaluate the propriety of the canine sniff. We disagree. A substantive right is defined as "a right to equal enjoyment of fundamental rights, privileges and immunities; distinguished from a procedural right." Black's Law Dictionary 1429 (6th ed.1990). By contrast, procedural law is "that which prescribes the methods of enforcing rights or obtaining redress for their invasion; as distinguished from the substantive law which gives or defines the right." *Id.* at 1203. The issue before this Court is a strict constitutional law question involving the fundamental right to be free from unreasonable searches and seizures. Therefore, the issue is one that must be addressed under the principles of conflicts between substantive laws, which require this Court to evaluate which state has the most interest in the outcome.

■ Here, California possessed the greater interest in the validity of the canine sniff in question. The canine sniff took place in California and involved a package shipped by California residents. While this Commonwealth has an interest in

protecting its citizens from police misconduct and searches that are not supported by probable cause, the courts of this Commonwealth have no power to control the activities of a sister state or to punish conduct occurring within that sister state. No Pennsylvania state interest would be advanced by analyzing the propriety of the canine sniff under Pennsylvania law because the canine sniff did not occur in Pennsylvania and no Pennsylvania state officer was involved in the canine sniff. The courts of California have determined that a canine sniff is not a search requiring probable cause or a warrant. We will not question that decision under the conflicting decisions of Pennsylvania because Pennsylvania has no interest in a canine sniff search conducted within California's borders, even if the results are later used in the Pennsylvania Courts.

We find persuasive the reasoning of the Superior Court in *Commonwealth v. Bennett*, 245 Pa.Super. 457, 369 A.2d 493 (1976). In *Bennett*, the Superior Court held that evidence obtained during a drug investigation in New Jersey pursuant to a wiretap authorized by a New Jersey court on a telephone terminal located within New Jersey could be used to support a search warrant in Pennsylvania. The wiretap, which was authorized by New Jersey law, would have violated the Pennsylvania Wiretap Act. Nonetheless, the Superior Court determined that the information was competent evidence to support a Pennsylvania search warrant. The court stated:

> It is, of course, obvious that the courts of this Commonwealth have absolutely no power to control the activities of a sister state or to punish conduct occurring within that sister state. The legislature of New Jersey has determined that wiretapping, in appropriate circumstances and for proper cause shown, will be permitted within its borders. Thus, the information involved in the appeal before us was obtained by the New Jersey Police under a legal authorization.... If the legislature of a sister state or foreign jurisdiction determines that wiretapping will be permitted within its borders, we will not, under the present laws of Pennsylvania, question that decision.

*Id.* at 460–61, 369 A.2d at 494–95; *see also Commonwealth v. Corbo,* 295 Pa.Super. 42, 440 A.2d 1213 (1982) (evidence obtained through electronic telephone surveillance in New Jersey provided police with sufficient probable cause for the issuance of a search warrant in Pennsylvania despite the fact that the surveillance would have been illegal in Pennsylvania).

■ Thus we hold that if the courts of a sister state determine that a canine sniff is not a search in that state, the propriety of a sniff initiated by that state's officers and conducted within that state's borders must be evaluated under the laws of that state. Appellate courts in several other states have addressed this issue and reached similar results. In *Frick v. Oklahoma,* 634 P.2d 738 (Okla.Crim.App.1981), the Oklahoma Court of Criminal Appeals determined that wiretap evidence legally obtained in Virginia through court authorization was admissible in an Oklahoma court even though wiretapping was unlawful in Oklahoma. The court reasoned that "[i]n the present case, then, the authorization for disclosure should have come from the Virginia court which authorized the drug investigation during which officers overheard the conversations involving the appellant. And that court did issue such authorization." *Id.* 634 P.2d at 740. Similarly, the Supreme Court of Washington determined that Washington's Privacy Act did not apply to a defendant's statements taken by California police and recorded without defendant's knowledge or consent, as permitted by California law. *Washington v. Brown,* 132 Wash.2d 529, 940 P.2d 546 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998). The court allowed the statements to be admitted in a capital murder trial in Washington despite the fact that similar action in Washington might have violated the Privacy Act. The court reasoned that there was no state interest to be advanced by suppressing the recorded statements because no Washington state officer violated the Privacy Act and no one's statutory privacy interests were infringed. "The effect of suppression would have been to keep highly probative and lawfully obtained evidence from the jury." *Id.* 940 P.2d at 577.

While it is true that the propriety of the canine sniff might be subjected to greater scrutiny if analyzed under the Pennsylvania Constitution,[3] this fact has no effect on information properly obtained in a sister state. Therefore, because the Superior Court correctly applied the law of California, we affirm the order of the Superior Court reversing the order of the trial court and remanding the case for further proceedings consistent with its opinion.[4]

NIGRO, J., files a dissenting opinion in which FLAHERTY, C.J., joins.

NIGRO, Justice, dissenting.

Since I find that Pennsylvania, rather than California, law should apply to evaluate the legality of a California canine sniff leading to a prosecution in this Commonwealth, I must respectfully dissent. As noted by the Majority, while a canine sniff does not constitute a search under California law, this Court has found that a canine sniff is a search under the Pennsylvania Constitution. *Commonwealth v. Johnston,* 515 Pa. 454, 530 A.2d 74 (1987). In *Johnston,* this Court held that under Article I, Section 8 of the Pennsylvania Constitution, a canine sniff may only be conducted when the police are able to articulate reasonable grounds for believing that drugs may be present in the place they seek to search. *Id.* at 466, 530 A.2d at 79. If this standard is not met, evidence derived from the canine sniff, like any other evidence obtained in violation of a defendant's constitutional rights, is subject to suppression. Given this disparity between Pennsylvania and California law, the significance of which law our courts apply to the canine

---

**3.** There is a question whether the ATF agent acting on his own volition in California would be a state actor under the Pennsylvania Constitution; however, we need not reach this issue in light of our holding that California law applies. Furthermore, appellants raised both state and federal constitutional claims, and the ATF agent is a state actor for purposes of the federal constitution.

**4.** In so doing, we express no opinion on whether appellants had any reasonable expectation of privacy in a package sitting in a California Federal Express office.

sniff in the instant case is clear. In my view, Pennsylvania law should be applied.

In the first instance, I agree with the trial court that this case presents a question that is procedural in nature. The Majority, in rejecting the position that the instant matter is one of procedural law, cites Blacks Law Dictionary which defines procedural law as "that which prescribes the methods of enforcing rights or obtaining redress for their invasion." In my view, this definition clearly encompasses the question here of whether evidence derived from a California canine sniff is admissible in a prosecution brought in the courts of this Commonwealth. As the Superior Court stated in *Commonwealth v. Dennis:*

> It is a fundamental principal of the conflicts of laws that a court employs its own procedural rules. That is true in both civil and criminal cases, but especially in criminal cases as a sort of corollary to the local nature of substantive criminal law.... The law of evidence, including the admissibility of specifically offered evidence, has traditionally been characterized as procedural law.

*Dennis,* 421 Pa.Super. 600, 616, 618 A.2d 972, 980 (1992), *appeal denied,* 535 Pa. 654, 634 A.2d 218 (1993) (Pennsylvania Court would apply Pennsylvania law to determine if probable cause existed for a search warrant issued in New Jersey to search defendant's New Jersey home and thus, whether evidence derived from search was admissible at trial in Pennsylvania).

Under these principles, Pennsylvania law is clearly applicable.

The Majority, however, finds that the issue presented by this case is a matter of substantive law. As a result, the Majority borrows the conflict of law analysis applicable to substantive questions of civil law, which essentially evaluates which state has the greater interest in the outcome of a particular litigation, and applies it to the instant matter involving a conflict of laws in the criminal context. The Majority's approach, however, fails to consider this Court's decision in

*Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986), which dealt with conflict of law principles specifically applicable to criminal cases. In *Ohle,* we stated:

It is a basic proposition of conflict of laws in criminal cases that 'the question of jurisdiction and that of governing substantive law always receive the same answer. The governing law is always that of the forum state, if the forum court has jurisdiction.'

*Id.* at 578, 470 A.2d at 67 (quoting *Leflar, Conflict of Laws: Choice of Law in Criminal Cases,* 25 CASE WESTERN RES. L. REV. 44, 47 (1974)) (trial court committed no error in applying the law of the forum, Pennsylvania, in criminal prosecution). Since neither the Majority or the parties advance the argument that Pennsylvania lacks jurisdiction over the instant prosecution, and in light of the Majority's conclusion that the issue must be framed as one of substantive law, it is certainly troubling that the Majority fails to harmonize its rationale and result in this case with the proposition announced in *Ohle.* This Court's statement in *Ohle,* in my view, clearly lends support to the application of Pennsylvania law.[1]

Nonetheless, even under the conflict of law analysis employed by the Majority, I must also disagree with the Majority's sweeping conclusion that "Pennsylvania has *no interest* in a canine sniff search conducted in California's borders, even if the results are later used in the Pennsylvania courts." (empha-

---

1. Both *Ohle* and the Leflar article note that certain choice-influencing considerations may be relevant to deciding conflict of substantive law questions in criminal cases. They are, according to Leflar, predictability of results, interstate orderliness in the law's administration and the advancement of the forum's governmental interests. *Ohle,* 503 at 578, 470 A.2d at 67; Leflar, *supra,* at 61–65. In *Ohle,* however, we stated that " whatever the analysis, jurisdiction to hear the case is the fundamental question to which conflict of laws 'choice influencing' considerations are to be applied. A finding that there is jurisdiction will result in the forum law's application since the case will not be heard unless it is proposed to apply the forum's law to it." *Ohle,* 503 Pa. at 577, 470 A.2d at 67. Since *Ohle* involves this Court's most recent discussion of substantive law conflict principles in the criminal context, I find cause for great concern that the Majority's analysis fails to address *Ohle*'s role in its new analysis for conflicts between substantive laws in criminal cases.

sis added). Here, the canine search, though conducted in California, served to establish probable cause for the issuance of a search warrant in Pennsylvania. The subsequent search of the package then occurred in Pennsylvania. Perhaps most significantly, the defendants were charged with violations of the Pennsylvania Crimes Code and prosecuted in the courts of Pennsylvania. Under these circumstances, I cannot agree with the Majority that Pennsylvania lacks any interest in whether California's law, instead of its own, is applied to evaluate the propriety of the dog sniff in this case. In fact, I believe these circumstances compel the conclusion that Pennsylvania has the greater interest.[2]

Certainly, the Commonwealth has a strong interest in ensuring that the authority of Pennsylvania law, especially that law which stands to safeguard individual rights, is not weakened or undermined in any way. Under the Pennsylvania Constitution as interpreted in *Johnston*, it is clear that had this dog sniff occurred in Pennsylvania, the evidence obtained as a result could not properly be introduced against Appel-

**2.** Under the Majority's reasoning, as long as an activity is legal under the laws of a foreign jurisdiction, Pennsylvania, despite its status as the forum state, retains no interest in that activity or the information obtained as a result since our courts have "no power to control the activities of a sister state or to punish conduct occurring within that sister state." I am deeply concerned with the implications of this reasoning. Take, for example, a situation where the police, in a sister state with laws which do not quantify the amount of time a confession must be obtained from a suspect after arrest and before arraignment, obtain a confession from a particular suspect 10 hours after the initiation of interrogation. In the confession, the suspect implicates himself in crimes committed in Pennsylvania. In a prosecution later brought in Pennsylvania, the Commonwealth seeks to introduce the confession. Under Pennsylvania law, of course, the admission of the confession would violate the 6 hour rule of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987), and thus, would be subject to suppression. However, under the precedent created by the Majority today, it seems clear that the trial court in Pennsylvania would be forced to apply the sister state's law and allow the confession to be admitted into trial without any reference to the protections afforded by Pennsylvania law or our exclusionary rule. Unlike the Majority, I find it extremely difficult to digest the principle that our courts have no interest in the admissibility of this evidence, prohibited under Pennsylvania law, in a prosecution brought in our jurisdiction.

lants in the courts of this Commonwealth.[3] By importing California law into this jurisdiction, the Majority empowers the Commonwealth to circumvent Pennsylvania's Constitutional and procedural safeguards and introduce otherwise inadmissible evidence through the back door.[4] Unlike the Majority, I believe that Pennsylvania has an undeniable and unrivaled interest in preventing this from occurring.

For these reasons, I would reverse the Order of the Superior Court applying California law to evaluate the propriety of the canine sniff and reinstate the Order of the trial court applying Pennsylvania law and suppressing the evidence.

FLAHERTY, C.J., joins this dissenting opinion.

3. Applying Pennsylvania law, the trial court found that reasonable grounds were not present when the California agent ordered a canine sniff of the package and accordingly, suppressed the evidence subsequently found in the package pursuant to the search in Pennsylvania. I agree with the trial court's disposition. The trial court found that an ordinary looking package, delivered by two people who did nothing to arouse the suspicion of the California agent, and which carried a return business address which had no telephone listing and which was not listed in two directories, did not provide the California agent with reasonable grounds to support a canine search as required by *Johnston*. I agree that the facts available to the California agent were not sufficient to constitute reasonable grounds for believing that drugs were present in the package.

4. By allowing Pennsylvania courts to apply criminal laws and procedures adopted by other states, which have resulted from a state's own analysis of what is required by their own state constitution, the Majority's holding also threatens the vitality of this Court's steady line of precedent imparting a heightened expectation of privacy and broader protection under the Pennsylvania Constitution. *See e.g. Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997); *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996); *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994); *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).