J-S37015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.E.H. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.P.N. | |
| Appellant | No. 1073 WDA 2015 |

Appeal from the Order June 15, 2015
In the Court of Common Pleas of Cambria County
Domestic Relations at No(s): DR 1040-09

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                  **FILED JANUARY 25, 2017**

Appellant, J.P.N. ("Father"), appeals from the order entered in the Cambria County Court of Common Pleas, directing Father to pay sums of money to his two children, S.N. and E.N., and to pay counsel fees to Appellee, M.E. H. ("Mother").  We affirm.

A prior memorandum decision of this Court sets forth the relevant facts and procedural history of this case as follows:

> [Father] and [Mother] married on December 5, 1987.  Two children were born during the marriage: E.N. and S.N. The parties lived in Illinois at the time of separation.  The parties entered into a marital separation agreement on October 10, 1999[, which contained the following provision: "[t]he cost of college shall be apportioned [to each parent] pursuant to" the Illinois Marriage and Dissolution of Marriage Act (the "Illinois Act")].  A November 1, 2005 Illinois order directed [Father] to pay 20% of his gross monthly income as child support.

> Later, [Mother] and the children moved to Cambria County, Pennsylvania. [Father] eventually settled in South Carolina. On August 18, 2009, upon [Father]'s motion, the Illinois court transferred the parties' case to Cambria County, Pennsylvania. On October 2, 2009, [Father] filed a petition for modification of the November 1, 2005 [Illinois] support obligation, seeking a decrease because he now had another child. On October 2[9], 2009, the trial court registered and confirmed that November 1, 2005 order [from Illinois].

*M.E.H. v. J.P.N.*, Nos. 1071 WDA 2011, 1169 WDA 2011, unpublished memorandum at 1-2 (Pa.Super. filed March 29, 2012) (internal citations to the record omitted). Following a support conference on November 4, 2009, on Father's petition for modification, the trial court entered a support order on November 20, 2009, utilizing the Pennsylvania support guidelines. *De novo* support appeal hearings occurred throughout 2010, followed by a court order, exceptions to the order, and a final order issued on June 7, 2011, which reduced the amount of child support owed under the November 1, 2005 Illinois order; created new support obligations on behalf of the children, effectively emancipated E.N.; and required Father to pay one-third of E.N.'s college expenses. Father appealed and Mother cross-appealed. This Court affirmed on March 29, 2012 (upholding Father's obligation to contribute to children's college costs under parties' agreement; confirming trial court's authority to modify Illinois support order because Pennsylvania law and Illinois law are similar as to modification and termination of child support; deeming waived Father's other issues concerning dollar amount of college expenses and payment of them to Mother instead of directly to

college, because Father failed to support his other issues with relevant legal authority). Regarding Mother's issues, this Court concluded Father did not voluntarily reduce his income willfully to avoid support obligations; trial court correctly adjusted Father's support obligation downward; and court had authority under either Pennsylvania or Illinois law to adjust Father's support obligation, based on significant change in circumstances, noting November 1, 2005 Illinois order had already modified monthly support obligation set forth in parties' marital settlement agreement. ***See id.***

Following the appeal, the parties continued to dispute what constituted educational expenses and the exact amount owed for educational expenses. By order of June 19, 2013, Father was required to pay 72% of each child's educational expenses; Mother was required to pay 18% of each child's educational expenses; and each child was required to contribute 10% to her own expenses. Mother then filed another petition for modification, claiming Father earned a higher income. The trial court reapportioned the percentages of the parties' obligations and entered an order on December 18, 2013, mandating that, effective from July 3, 2013 to July 2, 2014, Father must pay 82% of each child's educational expenses; Mother must pay 8% of each child's educational expenses; and each child must contribute 10% to her own expenses; the other provisions of the court's prior orders remained in effect.

On September 22, 2014, Mother filed another petition for support

modification, claiming Father had misrepresented his inheritance to the court and he had an increase in monthly income. At the hearing on the petition, Mother asserted Father received multiple checks from his parents' estates, totaling $239,945.29, which he had failed to disclose to the court. Father disputed the inheritance as income. Father also disputed that he had received a distribution of $41,359.49 from his father's estate because Father claimed he waived that amount in favor of his sister for taking care of their parents. Mother also asked for counsel fees, as Father's actions had necessitated this litigation and warranted an award of fees.

After the hearing, the hearing officer issued certain findings: (a) excluding $41,359.49 from Father's total inheritance; (b) recommending Father pay $10,858.50 in lump-sum payments to each child; and (c) denying Mother's request for counsel fees because the hearing officer had not received counsel's itemized bill as requested. The trial court initially confirmed the hearing officer's recommendations on April 7, 2015. Father and Mother filed exceptions. In a June 12, 2015 opinion, the court concluded: Father underreported his inheritance; the hearing officer erroneously excluded $41,359.49; the amount due each child is $14,434.52; and Mother's counsel had faxed her bill to the hearing officer and is entitled to $1,230.00 in fees. The court's opinion and order were filed on June 15, 2015. In effect, the court ordered Father to pay (a) $14,434.52 in lump-sum payments to each child (representing 20% of Father's total inheritance,

which included the $41,359.49 payment, a 20% deviation from the Pennsylvania support guidelines with a modest adjustment for the small increase in Mother's income) and (b) $1,230.00 in fees to Mother's counsel.

Father timely filed a notice of appeal on July 13, 2015. The trial court ordered Father on July 15, 2015, to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b). Father timely complied on July 27, 2015.

Father raises the following issues for our review:

> DID THE TRIAL COURT ERR IN FAILING TO RECALCULATE THE ALLOCATION OF COLLEGE EXPENSES OWED BY MOTHER, FATHER AND THE PARTIES' TWO ADULT CHILDREN, GIVEN THE DECREASE IN FATHER'S INCOME, THE SIGNIFICANT AMOUNT OF INCOME TAXES PAID BY FATHER AND THE INCREASE IN MOTHER'S INCOME?
>
> DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN ORDERING FATHER TO PAY TWENTY PERCENT (20%) OF HIS INHERITANCE TO HIS ADULT CHILDREN, [S.N. AND E.N.], SPECIFICALLY, $14,434.52 TO EACH CHILD[?]
>
> DID THE TRIAL COURT ERR IN CALCULATING THE SUM OF $41,359.49 IN THE TOTAL AMOUNT THAT FATHER RECEIVED FROM AN INHERITANCE, GIVEN THAT THE TESTIMONY AND THE EXHIBITS CONFIRMED THAT FATHER DID NOT RECEIVE THE AFOREMENTIONED SUM OF $41,359.49 FROM HIS FATHER'S ESTATE?
>
> DID THE TRIAL COURT ERR IN ORDERING FATHER TO PAY $14,434.52 DIRECTLY TO HIS ADULT CHILDREN, [S.N. AND E.N.], INSTEAD OF TOWARDS THE CHILDREN'S COLLEGE EXPENSES AND/OR STUDENT LOAN OBLIGATIONS?
>
> DID THE TRIAL COURT ERR IN FINDING THAT MOTHER'S COUNSEL FAXED HER BILL TO THE HEARING OFFICER AND IN AWARDING MOTHER'S COUNSEL THE SUM OF

> $1,230.00, GIVEN THAT THE ALLEGED BILL FROM MOTHER'S COUNSEL WAS NEVER RECEIVED BY THE DOMESTIC RELATIONS OFFICE, NOR FATHER'S COUNSEL, AND WAS NEVER MADE PART OF THE RECORD?

(Father's Brief at 4).

Preliminarily, we recognize that pursuant to the applicable rules of appellate procedure, the argument section of an appellate brief must contain a discussion of an appellant's contentions on appeal as well as legal arguments and citations supporting those contentions. **See** Pa.R.A.P. 2119(a). Specifically,

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This [C]ourt will not consider the merits of an argument which fails to cite relevant case or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013). Where an appellant fails to raise or properly develop issues on appeal, or where the brief is wholly inadequate to present specific issues for review, a court will not consider the merits of the claims raised on appeal. *Butler v. Illes*, 747 A.2d 943, 944-45 (Pa.Super. 2000) (holding appellant waived claim where appellant failed to set forth adequate argument concerning claim on appeal; appellant's argument lacked meaningful substance and failed to provide cogent explanation or even tenuous assertion on how trial court abused its discretion or made error of law). *See also In re C.P.*, 901 A.2d 516, 522

(Pa.Super. 2006) (holding mother's failure to support claim on appeal with relevant legal authority or discussion precluded appellate review of issue); **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa.Super 2006) (explaining appellant's arguments must adhere to rules of appellate procedure; arguments which are not appropriately developed are waived on appeal); **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa.Super. 2002) (stating rules of appellate procedure make clear appellant must support each question raised by discussion and analysis of pertinent authority; lack of reasoned discussion of law in appellate brief hampers meaningful review and necessitates waiver of issue on appeal). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Irwin Union Nat. Bank and Trust Co. v. Famous**, 4 A.3d 1099, 1103 (Pa.Super. 2010), *appeal denied*, 610 Pa. 610, 20 A.3d 1212 (2011).

Here, Father presents no legal argument to support his first claim that the trial court abused its discretion when it failed to reapportion the parties' college expense obligations. Although Father cites three "rules" in his brief, he fails to include the language of the rules or explain how each supports his argument. Father's failure to develop this claim on appeal precludes meaningful review and constitutes waiver of his first issue. **See** Pa.R.A.P. 2119(a); **Estate of Haiko, supra**.

For ease of disposition, we outline Father's remaining arguments together. Father argues the trial court failed to explain in writing the

- 7 -

reasons for accepting the hearing officer's 20% deviation from the support guidelines.[1] Father also asserts the trial court's statement that the deviation was "reasonable" constituted insufficient reasoning for the deviation because, according to the guidelines, the court was required to consider several factors in deciding to deviate from the guidelines. Father claims he did not actually receive the $41,359.49 payment from his father's estate because he waived it in favor of his sister. So, Father reasons that amount should not have been factored into his total inheritance, which then disproportionately affected his court-ordered support obligations. Father also contends he should not be obligated to pay $14,434.52 in lump sums directly to each child. Instead, he insists the basis of this litigation is the marriage settlement agreement and the Illinois Act, under which Father and Mother are obligated to pay certain sums for their children's educational expenses. Father avers the obligation to pay money directly to his children contravenes the intent of assuring the payment is for the children's

---

[1] The trial court's Rule 1925(b) order was clearly stated, plainly valid, and duly filed with the requisite notice requirements for civil Rule 1925(b) orders. To the extent Father argues the trial court failed to explain **in writing** the reasons it accepted the hearing officer's 20% deviation from the support guidelines and included in Father's inheritance the amount of $41,359.49, he did not raise that issue in his Rule 1925(b) statement. Consequently, we deem it waived. *See Linde v. Linde Enterprises, Inc.*, 118 A.3d 422, 430 (Pa.Super. 2015), *appeal denied*, ___ Pa. ___, 129 A.3d 1243 (2015) (waiving claim not contained in appellant's court-ordered Rule 1925(b) statement; stating: "Any issues not raised in a [Rule] 1925(b) statement will be deemed waived").

educational expenses. Father further complains he should not be required to pay Mother's counsel fees because no record evidence indicates that Mother's counsel had faxed her itemized fee bill to the hearing officer as required. Father concludes this Court should reverse the trial court's order and remand the matter for additional findings consistent with Father's contentions. We disagree.

The well-settled standard of review in a child support case provides:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Silver v. Pinskey*, 981 A.2d 284, 291 (Pa.Super. 2009) (*en banc*) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)).

As a general rule, the law of the chosen forum governs all procedural matters. *Sheard v. J.J. DeLuca Co., Inc.*, 92 A.3d 68, 76 (Pa.Super. 2014) (citing *Commonwealth v. Sanchez*, 552 Pa. 570, 716 A.2d 1221 (1998)). A dispute concerning the applicable substantive law, however, compels a choice of law analysis. *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa.Super. 2005). "Substantive law is the portion of the law which

creates the rights and duties of the parties to a judicial proceeding, whereas procedural law is the set of rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced." *Id.* A court conducts the choice of law analysis under the choice of law rules of the forum state. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21, 203 A.2d 796, 805 (1964).

"The first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states." *Budtel Associates, LP v. Continental Cas. Co.,* 915 A.2d 640, 643 (Pa.Super. 2006). "If no conflict exists, further analysis is unnecessary." *Id.*

**§ 5327.  Determination of foreign law**

**(a) Notice.—**A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth shall give notice in his pleadings or other reasonable written notice.

**(b) Materials to be considered.—**In determining the law of any jurisdiction or governmental unit thereof outside this Commonwealth, the tribunal may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence.

**(c) Court decision and review.—**The court, not jury, shall determine the law of any governmental unit outside this Commonwealth.  The determination of the tribunal is subject to review on appeal as a ruling on a question of law.

42 Pa.C.S.A. § 5327.  To ascertain the law of a sister state, a tribunal may

- 10 -

judicially notice the foreign law, and may inform itself of such law by considering any relevant material or source, regardless of whether it was submitted under the rules of evidence. 42 Pa.C.S.A. § 5327(b). The operation of foreign law presents a question of law, rather than fact. 42 Pa.C.S.A. § 5327(c).

After ascertaining the law, the court conducts a case-by-case analysis. **Budtel Associates, LP, supra**. "[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question." **Titeflex Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA**, 88 A.3d 970, 979 (Pa.Super. 2014), *appeal denied*, 629 Pa. 638, 105 A.3d 737 (2014) (quoting **Williams v. Stone**, 109 F.3d 890, 893 (3d Cir. 1997), *cert. denied*, 522 U.S. 956, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997)). If the court finds a true conflict exists, the court must then decide which state has the greater interest in the application of its law, including which state had the most significant contacts or relationship to the action. **Budtel Associates, LP, supra**.

"Whenever Pennsylvania is the chosen forum state for a civil action, …the Pennsylvania Rules of Civil Procedure govern, no matter what substantive law our courts must apply in resolving the underlying legal issues." **Ferraro v. McCarthy-Pascuzzo**, 777 A.2d 1128, 1137 (Pa.Super. 2001). "In conflicts cases involving procedural matters, Pennsylvania will

apply its own procedural laws when it is serving as the forum state." ***Id.*** (quoting ***Commonwealth v. Sanchez***, 552 Pa. 570, 575, 716 A.2d 1221, 1223 (1998)). ***See also Larrison v. Larrison***, 750 A.2d 895, 898 (Pa.Super. 2000) (reiterating procedural questions are determined by law of forum state).

Pennsylvania Rule of Civil Procedure 1910.16−5 sets forth factors the court considers when deciding whether to deviate from the basic support obligation:

> **Rule 1910.16-5. Support Guidelines. Deviation**
>
> **(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
>
> > *Note*: The deviation applies to the amount of the support obligation and not to the amount of income.
>
> **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
>
> (1) unusual needs and unusual fixed obligations;
>
> (2) other support obligations of the parties;
>
> (3) other income in the household;
>
> (4) ages of the children;
>
> (5) assets of the parties;
>
> (6) medical expenses not covered by insurance;
>
> (7) standard of living of the parties and their children;

(8)    in a spousal support or alimony *pendente lite* case, the period of time during which the parties lived together from the date of marriage to the date of final separation; and

(9)    other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(a)-(b).   "Thus, a court has reasonable discretion to deviate from the guidelines if it appears to be necessary and the record supports the deviation."   **Ricco v. Novitski**, 874 A.2d 75, 82 (Pa.Super. 2005), *appeal denied*, 586 Pa. 714, 889 A.2d 1217 (2005).

Under the Illinois Act, a court may award educational expenses of any non-minor child of the parties to a marriage settlement agreement, if the parties have agreed to dispose of their property or support their child as provided in Section 513 of the Act.   750 ILCS 5/502, 5/513.   The "[s]ums may be ordered payable to the child, to either party, or to the educational institution, directly or…as the court sees fit."   750 ILCS 5/513(e).

Additionally, when reviewing an award of counsel fees, we will not disturb a trial court's determination absent an abuse of discretion. **Verholek v. Verholek**, 741 A.2d 792, 795 (Pa.Super. 1999) (*en banc*), *appeal denied*, 563 Pa. 665, 759 A.2d 388 (2000).   A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law.   **Id.**   "Pennsylvania generally adheres to the American Rule, under which a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or

- 13 -

some other established exception." ***Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371, 464, 34 A.3d 1, 56-57 (2011), *cert. denied*, ___ U.S. ___, 133 S.Ct. 51, 183 L.Ed.2d 677 (2012) (internal quotation marks omitted).  Pennsylvania courts can award counsel fees to a party who "prevails" in an action but only "when authorized by statute or rule of court, upon agreement of the parties, or pursuant to some other recognized case law exception." ***Olympus Corp. v. Canady***, 962 A.2d 671, 677 (Pa.Super. 2008).

Section 2503 provides as follows:

### § 2503.  Right of participants to receive counsel fees

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

\*     \*     \*

**(7)** Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

\*     \*     \*

**(9)** Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

\*     \*     \*

42 Pa.C.S.A. § 2503(7), (9).   "[T]he statute focuses attention on the conduct of the party from whom counsel fees are sought and on the relative

merits of that party's claims." **See Thunberg v. Strause**, 545 Pa. 607, 616, 682 A.2d 295, 300 (1996) (citing **Bykowski v. Chesed, Co.**, 625 A.2d 1256, 1259 (Pa.Super. 1993)).

Instantly, Father transferred this matter from Illinois to Pennsylvania in 2009. Since then, Father and Mother have litigated in this state and chosen Pennsylvania as the forum for their disputes. The Pennsylvania Rules of Civil Procedure set forth the support guidelines. **See** Pa.R.C.P. 1910.16-5(a)-(b). Accordingly, Pennsylvania law governs the trial court's decision to deviate from the support guidelines. **See Sheard, supra**; **Ferraro, supra**; **Larrison, supra**.

The court addressed Father's claim regarding modifying Father's support obligation and deviating from the support guidelines as follows:

> The [c]ourt reviewed the findings and recommendations of the [h]earing [o]fficer, the [e]xceptions, pertinent parts of the transcripts of the hearings, and considered the well-made arguments of counsel. Finally, the [c]ourt drew upon the history of these litigious parties over the past several years to arrive at what it considers a proper disposition of these latest issues.
>
> The [c]ourt finds that [Father] did underreport the amount of his inheritance from his parents. As the [h]earing [o]fficer noted in his report when discussing the payment of $31,189.95 "...for [Father] to maintain that this money...is not part of his inheritance from his Father's estate is [neither] logical nor is it the law." This [c]ourt goes further and finds that [Father's] position affects his credibility on the entire inheritance amount in dispute.
>
> The [c]ourt finds that [Father] received or had the right to receive the following amounts as a result of his parents' deaths in 2011 and 2012.

- 15 -

| | |
|---|---|
| $32,195.67 | On or about May 17, 2012. The check was signed by "Kathleen A. Noonan, Executrix" and drawn on the Estate of Robert J. Noonan account. |
| $37,853.29 | On or about May 24, 2012. The check was signed by "Kathleen A. Noonan, Executrix" drawn on the Estate of Robert J. Noonan account. The memo line of the check states "mom's IRA second payment." |
| $90,000.00 | On or about July 13, 2013. The check was signed by Kathleen A. Noonan and drawn on the Robert J. Noonan Living Trust. Kathleen A. Noonan is identified on the check as "TTEE." |
| $7,346.89 | On or about August 10, 2013. The check was signed by Kathleen A. Noonan and drawn on the Robert J. Noonan Living Trust. |
| $31,189.95 | On or about August 10, 2013. The check was signed by Kathleen A. Noonan and drawn on Ms. Noonan's personal checking account. The evidence clearly established that this was part of [Father's] interest in his parents' home. |
| $41,359.49 | Which represented an amount that [Father] waived |

to his sister's benefit from his share of his father's estate. In this amount, [Father] clearly had a claim of right.

$239, 945. 29. [Total]

[Father] acknowledged only receiving $90,000.00 in his sworn testimony.

The [c]ourt does not understand why the [h]earing [o]fficer did not calculate the $41,359.49 in the total amount to be considered. [Father] testified he "waived" that amount in favor of his sister. This [c]ourt finds that this should have been included in the total amount.

The [c]ourt therefore calculates the underreporting to total $149,945.29 ($239,945.29 minus $90,000.00).

[Father] argues that [Mother's] income increased by $8,000.00. The [c]ourt considers that amount in its final calculation and takes 70[%] as a net for a deduction of $5,600.00.

The [c]ourt also accepts the [h]earing [o]fficer's 20[%] deviation as reasonable and arrives at the following amounts due to two children:

| | |
|---|---|
| $239,945.29 | Full amount of [Father's] inheritance. |
| - $90,000.00 | Amount [Father] testified he received. |
| $149,945.29 | Underreported. |
| - $5,600.00 | Estimated amount of [Mother's] net increase and income. |
| $144, 345.29 | Adjusted additional income. |
| x 20% | |

$28,869.06

÷ 2

$14,434.52                    To each child.

(Trial Court Opinion, filed June 15, 2015, at 2-5).

We see no reason to disturb the trial court's modification of Father's support obligation or the court's deviation from the support guidelines. The record makes clear Father received his inheritance from his parents' estates in the form of several checks which he failed to disclose to the court. Mother filed a petition to modify the parties' support obligation soon after she learned of Father's inheritance. The court reviewed the hearing officer's findings and recommendations, the parties' exceptions, the hearing transcripts, and the arguments of counsel. Based on the foregoing, the trial court did not abuse its discretion when it modified the parties' support obligations and deviated from the support guidelines, in light of Father's underreported inheritance. *See* Pa.R.C.P. 1910.16-5(a)-(b); ***Ricco, supra***; ***Silver, supra***.

Regarding Father's claim that he should not be required to pay his children directly, the parties' marital settlement agreement states the parties will bear their children's college education costs pursuant to the Illinois Act. Per the Illinois Act, the trial court could award educational expenses of the parties' non-minor children made payable to the children directly, given that the parties had agreed to dispose of their property or support their child as

provided in Section 513 of the Act. **See** 750 ILCS 5/513(e) (stating: "[s]ums may be ordered payable to the child, to either party, or to the educational institution, directly or…as the court sees fit").[2] Thus, the trial court did not abuse its discretion when it ordered Father to make payments to each child directly.

Finally, the record supports the award of modest counsel fees to Mother, where the court verified Mother's counsel had faxed her fee schedule to the hearing officer. Further, Father misrepresented his inheritance to the court, which necessitated the instant petition for support modification. The record also indicates Father has failed to make timely support payments, which caused Mother to file several petitions to compel compliance with support orders. Based on the foregoing, the trial court properly awarded Mother's counsel fees in this matter. **See Verholek, supra**; 42 Pa.C.S.A. § 2503(9). Accordingly, we affirm.

Order affirmed.

_____

[2] Nothing in Pennsylvania law requires parents to support their children past the age of majority. **See Blue v. Blue**, 532 Pa. 521, 529, 616 A.2d 628, 633 (1992) (stating: "[N]otwithstanding a child reaching majority at age 18, a parental duty of support is owed until a child reaches 18 or graduates from high school, whichever event occurs later"). Likewise, nothing in Pennsylvania law prohibits parents from contracting to pay the educational expenses of their non-minor children; in that context, the obligation is contractual. **See W.A.M. v. S.P.C.**, 95 A.3d 349, 352 (Pa.Super. 2014) (reiterating well-established rule that party can contractually assume duty to support child's post-secondary education). Thus, we see no conflict of laws in this case regarding the parties' agreement to pay for their non-minor children's educational expenses.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/25/2017